■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HOLLY A. REVETTE, Appellant. [851 NYS2d 299]—

Lahtinen, J. Appeal from a judgment of the County Court of Cortland County (Ames, J.), rendered February 20, 2007, upon a verdict convicting defendant of the crimes of arson in the third degree (two counts) and burglary in the third degree (two counts).

A small fire in a house being constructed by Larry Mitchell for Arthur Kiggins was discovered and quickly extinguished when Mitchell returned to the work site for equipment early in the evening of December 7, 2005. A second fire at Kiggins' premises, occurring on December 30, 2005, totally destroyed the house. Following an investigation, defendant—Kiggins' former girlfriend who was involved in an ongoing child custody dispute with Kiggins and lived across the road from the site of the fires—was arrested. She was indicted for arson in the third degree and burglary in the third degree for each of the two fires. A jury found her guilty of all four crimes and she was sentenced to an aggregate prison term of 3¹/₃ to 10 years. Defendant appeals.

Defendant argues that, since one of the grand jurors was the spouse of one of the three deputy sheriffs who investigated the fire and testified before the grand jury, her motion to dismiss

the indictment should have been granted.* She seeks dismissal under CPL 210.35 (5), which is the "catchall provision" for dismissal (*People v Williams*, 73 NY2d 84, 90 [1989]) and, while dismissal under that provision remains an "exceptional remedy," such relief is merited in "instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the [g]rand [j]ury" (*People v Huston*, 88 NY2d 400, 409 [1996]; *see People v Mujahid*, 45 AD3d 1184, 1185 [2007]). Unlike the statutory provisions that apply to petit jurors (*see* CPL 270.20 [1] [c]), upon which defendant places reliance, the provisions governing a grand jury do not provide for a challenge to a grand juror based on his or her relationship to a witness (*see* CPL 190.20 [2] [b]; Judiciary Law § 510). Moreover, remote familial relationships or speculative assertions of possible bias are insufficient to require dismissal of an indictment (*see People v Wormuth*, 35 AD2d 609, 609 [1970]; *People v Briggs*, 50 Misc 2d 1062, 1065 [1966]).

Nevertheless, a close relationship between a grand juror and a witness raises the real risk of potential prejudice (*see State v Penkaty*, 708 NW2d 185, 198 [Minn 2006]; *People v Cipolla*, 163 Misc 2d 144, 145 [1994]; *State v Murphy*, 110 NJ 20, 27, 538 A2d 1235, 1238 [1988]; *see also* CPL 190.20 [2] [b] [a grand juror should not serve if "incapable of performing his (or her) duties because of bias or prejudice"]). Armed with knowledge of such a relationship, the prosecutor, who wields "substantial control over the [g]rand [j]ury" and has a "duty of fair dealing" (*People v Huston*, 88 NY2d at 406 [internal quotation marks and citations omitted]), should ensure fairness and, if there is any doubt with regard thereto, bring the potential bias to the attention of the court or otherwise excuse the grand juror (*see People v La Duca*, 172 AD2d 1054, 1055 [1991]; *People v Cipolla*, 163 Misc 2d at 148). "The likelihood of prejudice turns on the particular facts of each case" (*People v Huston*, 88 NY2d at 409) and a defendant "need not demonstrate actual prejudice" (*People v Sayavong*, 83 NY2d 702, 709 [1994]).

Here, when the prosecutor was informed that a grand juror was the spouse of a deputy sheriff who investigated the fires and would be testifying before the grand jury, the following dialogue ensued:

"THE PROSECUTOR: Your husband is one of those

---

* Although defendant was convicted by a jury following a trial, this issue nevertheless survives for appellate review in New York (*see People v Huston*, 88 NY2d 400, 411 [1996]; *People v Wilkins*, 68 NY2d 269, 277 n 7 [1986]; *but cf. United States v Mechanik*, 475 US 66 [1986]).

guys? I think they mentioned that to me. So you don't think you could be fair and impartial? Your [sic] not just listening to him.

"GRAND JUROR: I can stay.

"THE PROSECUTOR: Why don't we do it this way, if you don't mind, you can stay. Before you deliberate and vote, we'll evaluate. Just because you know somebody, you don't have to necessarily excuse yourself, if you can be fair and impartial, okay. If that's okay with you. And, if you don't feel you can, then we'll excuse you."

This exchange does not reveal a clear and direct response from the grand juror specifically relating an ability to remain fair despite the fact that her spouse, a deputy sheriff, would be testifying about his investigation of defendant. In fact, the grand juror's response appears ambiguous. Moreover, the hearing transcript does not reveal that the prosecutor followed through on his suggestion that the issue would be revisited before the grand jury deliberated and voted. Further, the actual number of grand jurors voting to indict defendant is not recorded, leaving to speculation the potential significance of the single vote of this grand juror. In light of the close familial relationship, the significance of the testimony of the deputy sheriff appearing before the grand jury that included his wife, the absence of an unequivocal statement from the grand juror of an ability to remain impartial, the prosecutor's failure to follow the procedure he suggested to ensure impartiality, and the lack of a record of the vote, we are persuaded that the particular facts of this proceeding require that the indictment be dismissed

The remaining issues, to the extent not rendered academic, are unavailing.

Mercure, J.P., Peters, Spain and Malone Jr., JJ., concur. Ordered that the judgment is reversed, on the law, and indictment dismissed, with leave to the People to resubmit the charges to another grand jury.